[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 547.]

THOMAS, APPELLANT, *v*. COOK DRILLING CORP. ET AL.; HARTFORD

INSURANCE COMPANY, APPELLEE.

[Cite as *Thomas v. Cook Drilling Corp.*, 1997-Ohio-365.]

*Civil procedure—Workers' compensation—Trial court does not abuse its discretion in denying insurance company's eleventh-hour motion to intervene to assert a subrogation claim for workers' compensation benefits paid to decedent's estate pursuant to Pennsylvania law, when.*

(No. 96-873—Submitted April 2, 1997—Decided October 1, 1997.)

APPEAL from the Court of Appeals for Washington County, No. 94CA58.

_____

{¶ 1} Decedent Stephen Thomas suffered fatal injuries on October 31, 1990, while working on a construction project in Marietta, Ohio.  Thomas was a resident of Pennsylvania, and his employer on the job, Cook Drilling Corporation ("Cook Drilling"), was a Pennsylvania corporation.  This appeal involves the attempt of appellee, Hartford Insurance Company ("Hartford"), to intervene in the underlying survival and wrongful death action brought in Ohio.  That action included claims of intentional tort and workplace negligence against several defendants.  Hartford sought to intervene to assert a subrogation claim for workers' compensation benefits it had paid to decedent's estate pursuant to Pennsylvania law.

{¶ 2} On September 9, 1992, the complaint was filed in the Common Pleas Court of Washington County.  On June 30, 1994, the trial court awarded summary judgment to one defendant, Cook Drilling.  In that decision, the court ruled that Ohio law applied to the action.

{¶ 3} On July 8, 1994, the court moved the trial date from July, 11, 1994 to November 7, 1994.  Hartford filed its motion to intervene pursuant to Civ.R. 24 on

October 6, 1994. The last memorandum regarding that motion was filed on November 2, 1994. Hartford argued that as Cook Drilling's insurer and the payor of the workers' compensation benefits to decedent's estate, it had the right under Pennsylvania law to a subrogation lien against any award or settlement proceeds realized from the wrongful death action. Significantly, Hartford stated in its memorandum in support of its motion to intervene that its eleventh-hour attempt to enter the case would not affect the upcoming trial: "It should further be noted that granting this motion to intervene will not interfere with the upcoming trial date. In the event of settlement or judgment, the rights of the intervening plaintiff to any portion of the proceeds can be determined by the court after settlement or judgment."

{¶ 4} As Hartford's motion was pending, the claim against Stephens Construction Company, the managing contractor on the site, was settled. On November 7, 1994, the case proceeded to trial against the remaining defendant, Otis Elevator Company, but the parties settled on November 10, 1994. On November 16, 1994, the trial court announced its decision denying Hartford's motion to intervene, and journalized that decision on November 30, 1994.

{¶ 5} The trial court found that at the time of Thomas's fatal accident, Ohio did not yet recognize a right of subrogation for the payor of workers' compensation benefits. Further, the trial court noted that the wrongful death claim was made for the benefit of Thomas's heirs at law. The court found that the wrongful death beneficiaries had no obligation to Hartford, and that Hartford's remedy was to file a claim against the decedent's estate. The court ruled out a recovery by Hartford of any of the settlement funds generated by the wrongful death action — the court had found, contingent on the approval of the probate court, that all of the settlement money was to be paid to Thomas's next of kin to compensate them for their losses.

{¶ 6} The court of appeals ruled that the trial court had abused its discretion in not allowing Hartford's motion to intervene. The appellate court found that the

2

trial court erred in not applying 1 Restatement of the Law 2d, Conflict of Laws (1971), Section 185. Section 185 regards choice of law in a subrogation action for workers' compensation payments. It states:

"The local law of the state under whose workmen's compensation statute an employee has received an award for an injury determines what interest the person who paid the award has in any recovery for tort or wrongful death that the employee may obtain against a third person on account of the same injury."

{¶ 7} The Restatement thus recommends that the local law of the state under whose law an employee has received workers' compensation benefits should be the law which determines whether subrogation rights exist. The appellate court found that under the Restatement, Pennsylvania law applied as to the subrogation rights of Hartford, since it was under Pennsylvania law that it made payment to Thomas's estate. The court of appeals ruled that the trial court acted unreasonably by not considering Section 185 of the Restatement and in refusing to apply Pennsylvania law to the issue of subrogation.

{¶ 8} This matter is now before this court upon an allowance of a discretionary appeal.

_____

*Waite, Schneider, Bayless & Chesley Co., L.P.A.*, and *D. Arthur Rabourn,* for appellant.

*Earl, Warburton, Adams & Davis* and *Dick M. Warburton, Jr.,* for appellee.

_____

**PFEIFER, J.**

{¶ 9} This case is less about choice of law regarding subrogation rights than it is about how an eleventh-hour filing of a motion to intervene can affect the merit of the motion. When viewing the situation as a whole, we find that the trial court did not abuse its discretion in denying Hartford's motion to intervene.

{¶ 10} Civ.R. 24(A)(2) states:

"(A) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

{¶ 11} The lack of timeliness of Hartford's motion, while not a factor referred to by the trial court in denying the motion, is a factor which did, in fact, work against Hartford in this case. Thomas's personal representative filed the underlying claim in September 1992. As indicated in materials submitted by Hartford with its motion to intervene, it knew of the lawsuit by February 1994. The case moved forward and the parties performed discovery—all with no attempt at intervention by Hartford. When Cook Drilling succeeded on a motion for summary judgment in June 1994, Hartford still had taken no formal action to protect its interest. Trial had originally been set for July 11, 1994, but by July 8, 1994, when the trial date was moved to November 7, 1994, Hartford had not yet attempted to intervene. Not until four weeks remained until the rescheduled trial, over one hundred weeks after the filing of the complaint, did Hartford finally file its motion to intervene. Hartford's late filing set the stage for the motion's ultimate denial.

{¶ 12} Hartford made it known in its memorandum supporting its motion that it did not expect to be actively involved in the trial against the remaining defendants. Hartford wrote: "It should further be noted that granting this motion to intervene will not interfere with the upcoming trial date. In the event of settlement or judgment, the rights of intervening plaintiff to any portion of the proceeds can be determined by the court after settlement or judgment." In other words, Hartford did not wish to interfere in, or be involved with, the trial of the matter. It would, however, like to be around afterward to collect part of the judgment. Hartford's request to have its right to the proceeds of an award or settlement determined after

the case was tried or settled runs contrary to any claim that Hartford's interest was not adequately represented by the existing parties.

{¶ 13} The court, in effect, honored Hartford's request to have its rights determined after settlement. The case, with two years of momentum behind it, rolled on without Hartford. While Hartford's motion was pending, settlement was reached with Stephens Construction. The trial began a few days after the last memorandum regarding Hartford's motion was filed, and soon thereafter settlement was reached with Otis Elevator, the lone remaining defendant.

{¶ 14} Hartford's late filing allowed the trial judge to rule on the motion based not on a theoretical consideration of Hartford's subrogation rights, but on the fact of whether Hartford had any interest in the settlement actually reached. While the trial court stated in its opinion that Hartford had no subrogation rights under Ohio law, it still went on to determine whether Hartford could recover if it did have a right to subrogation.

{¶ 15} The court held that Hartford's only claim was against Thomas's estate. Thomas's estate received his workers' compensation benefits in Pennsylvania. A claim against the estate was not necessarily an empty claim. Funeral and burial expenses, pursuant to R.C. 2125.03, go to the party that paid those expenses. Damages for injuries suffered by Thomas after the accident, but before his death, would be paid to his estate.

{¶ 16} The court simply found that none of the settlement monies belonged to the estate, but instead would go to Thomas's next of kin to compensate them for their losses. There was no evidence that any of the settlement money was designated to pay the decedent's funeral and burial expenses or for his pain or suffering prior to death. Had there been some part of the settlement awarded to Thomas's estate, the trial court presumably would have granted Hartford's motion to intervene. However, we do not require courts to allow motions to intervene after

settlement where it has been determined that there has been no settlement which is reachable by the potential intervening party.

{¶ 17} Comment *c* to Section 185 of the Restatement of the Law of Conflicts actually supports the finding of the trial court. Comment *c* recognizes that choice of law on subrogation is different in wrongful death actions than in simple injury cases. In wrongful death cases where there are multiple beneficiaries, only a person who has received the workers' compensation award is subject to the subrogation laws of the payor's state. "The interests of the other persons in the wrongful death damages are not affected by the fact that one of their number has obtained a workers' compensation award." *Id.* at 553.

{¶ 18} In this case, there is no claim that anyone other than Thomas's estate received the workers' compensation benefits in Pennsylvania. Therefore, under the Restatement view, Pennsylvania law would apply only against monies awarded to the estate. There were simply no settlement proceeds to go to the estate that would justify allowance of a motion to intervene after settlement of the case. This is a rare instance where the case was over before the motion to intervene was ruled on, with the acquiescence of the potential intervenor.

{¶ 19} In sum then, given the standard enunciated by Civ.R. 24, the trial court was well within its discretion in denying Hartford's motion to intervene. The motion's lack of timeliness, while not a factor cited by the trial court, affected the motion's merit. First, in an attempt to keep the trial on schedule, Hartford in effect assured the court that through trial or settlement its interests would be adequately represented by the existing parties. Second, the late filing allowed the court first to determine whether any of the settlement monies belonged to the estate and were therefore reachable by Hartford. Since none of the settlement belonged to the estate, the trial court found that Hartford had no interest in the action.

{¶ 20} Accordingly, we reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

DOUGLAS, J., concurs separately.

COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**DOUGLAS, J., concurring.**

{¶ 21} I concur in the judgment of the majority. I do so, however, only on the basis that appellee was not entitled to any of the proceeds of settlement because those proceeds all belonged to the wrongful death beneficiaries who were not, in any way, obligated to or in privity with appellee. There is a clear and distinct legal difference between recovery for wrongful death and recovery for personal injury. While wrongful death is, clearly, the ultimate personal injury, the beneficiaries of each cause of action are different. In a cause of action for personal injury without death, the injured party is one of the beneficiaries of any proceeds from the tort action. In the case of wrongful death, only the eligible beneficiaries are entitled to the proceeds from the tort action. In fact, the fiduciary of the estate represents only those beneficiaries in a wrongful death action, and the estate, unless there is a survivorship claim, is not a party.

{¶ 22} I agree with the court of appeals that 1 Restatement of the Law 2d, Conflict of Laws (1971), Section 185, should have been considered by the trial court. In fact, maybe the trial court did consider the Restatement and found it not to be applicable. The Restatement is applicable when "the employee" obtains recovery against a third person. Here the employee did not recover—the wrongful death beneficiaries did. Thus, the Restatement does not apply and the trial court was correct in its ultimate ruling for whatever reason it was made.

———————————

**COOK, J., dissenting.**

**{¶ 23}** Because neither the nature of the plaintiff's claims before the court nor the timing of the motion to intervene should have precluded Hartford from protecting its right to subrogation, I respectfully dissent.

Nature of Plaintiff's Claims

**{¶ 24}** While it is appealing to follow the simple logic set forth in the concurrence that the nature of the plaintiff's claims (*i.e.,* wrongful death) precludes Hartford's subrogation claims, review of the procedural history of this case and of Pennsylvania's workers' compensation law mandates a different conclusion.

**{¶ 25}** With its amended complaint, the Estate of Stephen F. Thomas, in fact, asserted a survival claim that included medical expenses. It was only after settlement of all of the claims, and well after Hartford had filed its motion to intervene, that the trial court denied intervention, stating that "[t]he Plaintiff's action is for the benefit of herself and the Plaintiff's other heirs at law."

**{¶ 26}** There is nothing in the language employed by the trial court to suggest that it considered an apportionment of the settlement regarding the plaintiff's survival and wrongful death claims in reaching this conclusion. The court's use of the term "heirs" rather than "wrongful death beneficiaries" to describe the persons benefited by the action belies any assumption that the court considered such an apportionment and determined that all proceeds of the settlement should be characterized as recovery for wrongful death. Even if the court had conducted such an *ad hoc* apportionment, however, I still would find that the court erred in reaching that issue without permitting Hartford an opportunity to participate.

**{¶ 27}** By its complaint in intervention, Hartford not only sought to enforce its subrogation rights regarding the benefits paid to the decedent, it also sought to recover "wrongful death benefits" paid pursuant to Pennsylvania's workers' compensation statutes. While the court's denial of Hartford's motion to intervene precluded Hartford from further explaining the nature of these benefit payments,

review of Pennsylvania law suggests that the "wrongful death benefits" included payments made directly to, and for the benefit of, some or all of the settlement beneficiaries.

{¶ 28} Pennsylvania's workers' compensation scheme provides for payment of death benefits to "dependents" of a worker whose death has resulted from an injury sustained in the course of his or her employment. 77 Pa.Stat. 561. Death benefits under that section are based on a percentage of what had been the decedent's average weekly wage and continue until terminated by the happening of an event specified by statute. *Id.*; 77 Pa.Stat. 562. Among the class of persons potentially eligible for death benefits are the decedent's parents if partially or totally dependent on the deceased and the decedent's siblings if actually dependent on the decedent for support. 77 Pa.Stat. 561(5) and (6). Accordingly, the death benefits paid pursuant to Pennsylvania's workers' compensation law provide for recovery that is also included in the compensatory damages awarded under Ohio law for wrongful death pursuant to R.C. 2125.02(B)(1) (loss of support for reasonably expected earning capacity of the decedent).

{¶ 29} Additionally, under Pennsylvania workers' compensation law, death benefits include a lump sum award for burial expenses that is paid directly to the undertaker. 77 Pa.Stat. 561(7). Burial expenses are also recoverable under Ohio's wrongful death statute and were among the damages sought by plaintiff. R.C. 2125.02(A)(2).

{¶ 30} Pennsylvania's workers' compensation subrogation statute, which was in effect well before this cause of action arose, provides, "Where the compensable injury is caused in whole or part by the act or omission of a third party, the employer shall be subrogated to the right of the employe[e], his personal representative, his estate *or his dependents,* against such third party to the extent of the compensation payable under this article by the employer * * *." (Emphasis added.) 77 Pa.Stat. 671. Accordingly, if applied, Pennsylvania's workers'

compensation law could have provided Hartford subrogation rights (based on workers' compensation benefits paid) to the awards recovered by the wrongful death beneficiaries in addition to any survival award paid to the decedent's estate.

Application of the Restatement

{¶ 31} The remaining issues in this case are (1) whether 1 Restatement of the Law 2d, Conflict of Laws (1971), Section 185, is applicable to determine which state's workers' compensation subrogation statute applies and, if so, (2) whether the trial court's failure to apply the Restatement provision is grounds for reversal.

{¶ 32} I agree with Justice Douglas that 1 Restatement of the Law 2d, Conflict of Laws (1971), Section 185, should have been considered by the trial court. The Restatement provides a sound rule permitting consistent application of one state's workers' compensation scheme. In this case, Pennsylvania law required the employer to pay benefits to its employee and his dependents because he was fatally injured in the course of his employment. The employer could not avoid payment of benefits despite the fact that the injury was caused by a third-party tortfeasor. In turn, however, Pennsylvania's scheme permits the employer to seek reimbursement for those payments from any recovery from the third-party tortfeasor. Accordingly, exclusive application of that state's workers' compensation statute preserves the legislative give and take considered in fashioning the worker's remedy. Otherwise, piecemeal application of different states' workers' compensation statutes creates a risk of an outcome not contemplated by either legislature in drafting the respective statutes.

{¶ 33} Having determined that Section 185 of the Restatement of Conflicts 2d is appropriate for determining the choice-of-law issue, the next question is whether failure to employ the Restatement provision constitutes grounds to reverse the trial court. Both parties make their arguments under an assumption that an "abuse of discretion" standard is appropriately applied to the trial court's denial of the motion to intervene. Even the appellate court reviewed the trial court's order

under an abuse of discretion standard. Intervention under Civ.R. 24(A)(2), however, is not a matter that is wholly left within the trial court's sound discretion. Instead, Civ.R. 24(A)(2) requires the court to grant a timely filed motion to intervene "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

{¶ 34} "[W]here a specific action, ruling or order of the court is required as a matter of law, involving no discretion, the test of 'abuse of discretion' should have no application." *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 89, 52 O.O.2d 376, 380, 262 N.E.2d 685, 690. Accordingly, unless the trial court based its decision on a matter left within its discretion by rule or otherwise, application of the "abuse of discretion" standard is inappropriate.

{¶ 35} Application of the appropriate state subrogation law is not a matter left to the discretion of a trial judge. In the absence of controlling authority from this court on the subject, the trial court was required to make a choice. That choice, however, must be guided by the force of law, not discretion. When the choice is erroneous, reviewing courts must so hold.

Timing of Intervention

{¶ 36} Once we have determined that Pennsylvania supplies the appropriate subrogation law, the statute provides Hartford an interest in the action as required by Civ.R. 24. As evidenced by the trial court's classification of the settlement award, Hartford's interest was, in fact, impaired by the disposition of the action. The only factors remaining that possibly could have been left to a judge's discretion under Civ.R. 24 were the timing of the motion and a determination that Hartford's interest was adequately protected by the existing parties. Review of the trial court's order denying intervention reveals that neither of these issues entered into its

decision. Instead, the court merely determined that Ohio law applied and that Hartford had no statutory right to subrogation. Accordingly, I believe that the majority's attempt to ground the trial court's order denying intervention in the timing of Hartford's filing is improper.

{¶ 37} Finally, I disagree with the majority's reasoning that the merit of Hartford's motion to intervene was adversely "affect[ed]" by the timing of its filing. The majority concludes that Hartford's "late filing allowed the court first to determine whether any of the settlement monies belonged to the estate and were therefore reachable by Hartford. Since none of the settlement belonged to the estate, the trial court found that Hartford had no interest in the action." As previously discussed, that reasoning is not legally or factually supported.

{¶ 38} Moreover, the very purpose of permitting intervention as of right under Civ.R. 24(A)(2) is to enable a party to preserve an interest affected by the litigation. Pursuant to statute, Hartford's interest was limited to subrogation from the award recovered by the plaintiff from a third-party tortfeasor. It could not control the litigation and its interest could be determined only after the realization of plaintiff's award against a third-party tortfeasor. Hartford moved to intervene before the realization of any award or settlement that would trigger its interest. Hartford acted in a timely manner and the court's failure to apply the proper law denied Hartford the opportunity to preserve its interest as provided by rule.

{¶ 39} Based on all of the foregoing, I would affirm the judgment of the court of appeals.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____