{¶ 1} Appellant Nathaniel Dumas is appealing his guilty plea and conviction in the Mahoning County Court of Common Pleas on three counts of felonious assault. Appellant argues that he has been denied due process in the right to a speedy appeal because this appeal has been pending since August 27, 1998. Appellant also argues that his trial counsel was ineffective by failing to recommend that Appellant withdraw his guilty plea when he protested his innocence at sentencing. Our review of the record reveals that Appellant's plea was not offered knowingly. Thus, we must reverse his conviction as to his plea. However, due to delays caused by his original appointed appellate counsel in this case it is appropriate to reverse Appellant's conviction and dismiss the charges against him rather than remand the matter for a new plea to be entered. This being the case, Appellant's due process argument is moot.
 {¶ 2} On October 25, 1997, Gail Miller was driving her car in Youngstown when it was hit by a bullet coming from a passing car. Ms. Miller later identified Appellant as the shooter. On December 29, 1997, the Mahoning County Grand Jury indicted Appellant on three counts of felonious assault, in violation of R.C. 2903.11(A)(2), second degree felonies. Each count contained a gun specification.
 {¶ 3} On June 10, 1998, the trial court accepted Appellant's guilty plea to the three felonious assault charges and the gun specifications were dropped from the indictment. Appellant's written guilty plea stated that Appellant understood he could receive probation by pleading guilty. (6/3/98 Plea Agreement, p. 2.) At the plea hearing, the trial judge informed Appellant that he was not sure whether Appellant could receive shock probation or judicial release:
 {¶ 4} "THE COURT: The thing I have in my head, the uncertainty, is whether once you're sentenced, whether I have the authority to grant what's called judicial release, whether I can give you the old shock probation — something like that. I think maybe I have to sentence you. That's what I'm not sure of. And if I do sentence you, whether I can grant you — whether I can shorten that sentence once you're sent to the penitentiary, I don't know that. JP [Appellant's attorney] will probably convince me that I do have that authority, and the Prosecutor, who is a good lawyer, will probably convince me that I do also, but I'm just telling you that I don't know it yet. I don't know. I'm just telling you you're taking your chances when you're entering a plea here. Follow?" (6/10/97 Tr., p. 13.)
 {¶ 5} Appellant was sentenced on July 29, 1998. At the sentencing hearing, Appellant protested that he was not pleading guilty to committing a crime but only to being at the scene of the crime. (7/29/98 Tr., p. 18.) Appellant stated that he was not the shooter and that he merely gave police the shooter's identity. (7/29/98 Tr., pp. 21-22.) He stated he was only admitting that he was in the wrong place at the wrong time. (7/29/98 Tr., p. 7.) Appellant's counsel did not attempt to have Appellant withdraw his plea during the sentencing hearing.
 {¶ 6} The sentencing entry was filed on July 29, 1998. The trial judge sentenced Appellant to five years in prison on each of the three counts of felonious assault, to be served concurrently. Defendant was granted 175 days for time already served.
 {¶ 7} Appellant filed a notice of appeal on August 27, 1998. Appellant's trial counsel filed a motion to withdraw as counsel on August 27, 1998. Attorney Ronald Knickerbocker was appointed as appellate counsel on October 9, 1998.
 {¶ 8} Appellant's counsel filed motions for extension of time to file his appellate brief on October 28, 1998, December 7, 1998, and February 3, 1999. Counsel stated that the record on appeal had only been recently filed and that he needed more time for its review. Counsel was given final leave to file his brief until March 17, 1999. The Court did not know at that time that no transcripts were requested or filed as part of the record.
 {¶ 9} On March 11, 1999, Appellant's counsel requested an order that the transcript of the July 29, 1998, sentencing hearing be prepared at no cost to defendant. There was no explanation given as to why this had not been earlier requested. The motion to prepare the transcript at the state's expense was granted on May 4, 1999.
 {¶ 10} Neither Appellant nor the state took any further action in the appeal for over nine months.
 {¶ 11} On February 24, 2000, this Court filed a sua sponte Journal Entry stating that it was unclear whether a complete record on appeal had been filed, and ordering Appellant to further prosecute the appeal within thirty days or else the appeal would be dismissed.
 {¶ 12} On March 17, 2000, Attorney Knickerbocker filed a motion to withdraw as counsel pursuant to State v. Toney (1970), 23 Ohio App.2d 203,262 N.E.2d 419. The motion stated that Attorney Knickerbocker, "thoroughly and extensively researched the record, pleadings, and the law, and has had discussions with the trial counsel, and has been unable to find any meritorious appealable issue."
 {¶ 13} On March 21, 2000, the Mahoning County Clerk of Courts filed a notice with this Court that the transcript of proceedings was filed on March 17, 2000, the same day as counsel's motion to withdraw. At this time no transcript of the June 10, 1998, plea hearing had yet been ordered by counsel.
 {¶ 14} On April 17, 2000, Attorney Knickerbocker filed a request for fees and expenses in the amount of $434.51, based on work done through April 11, 2000. The sum was allowed by this Court.
 {¶ 15} In reviewing Attorney Knickerbocker's request to withdraw as counsel, this Court became aware that no transcript of the plea hearing had been ordered. As this appeal involves a guilty plea, it was immediately obvious that the plea hearing transcript was necessary for an adequate review of any issues on appeal. It was also obvious that Attorney Knickerbocker could not have reviewed whether there were any appealable issues without obtaining the plea hearing transcript. On August 22, 2000, this Court filed a Journal Entry ordering a transcript of the June 10, 1998, plea hearing to be prepared.
 {¶ 16} On May 23, 2001, we filed another Journal Entry noting that the June 10, 1998, plea hearing transcript had not yet been prepared. This Court once again ordered that the transcript be prepared.
 {¶ 17} This Court denied Attorney Knickerbocker's request to withdraw as counsel, and ordered him to review the complete record before deciding whether the matter involved an appealable issue or issues. The transcript was finally filed on May 31, 2001. Again, counsel apparently did nothing with this matter for several months.
 {¶ 18} On October 30, 2001, without even requesting additional extensions of time within which to file a brief, Attorney Knickerbocker refiled his motion to withdraw as counsel claiming he failed again to find any appealable issues.
 {¶ 19} On January 25, 2002, this Court filed a Journal Entry giving Appellant thirty days to file a separate pro se brief listing any possible assignments of error, pursuant to State v. Toney, supra.
 {¶ 20} On April 11, 2002, Attorney Knickerbocker filed with this Court a supplemental request for fees and expenses, which was denied.
 {¶ 21} We undertook our own review of the matter pursuant to Statev. Toney, supra. On April 26, 2002, this Court found that there were, arguably, issues for appeal. We removed Attorney Knickerbocker as counsel. Substitute counsel from the Ohio Public Defender's Office was appointed.
 {¶ 22} Attorney David H. Bodiker made a first appearance as new counsel on May 16, 2002. From this point on the appeal proceeded expeditiously. All briefs, including Appellant's reply, were filed by September 30, 2002.
 {¶ 23} Appellant presents two assignments of error, which will be treated in reverse order.
 {¶ 24} Appellant's second assignment of error asserts:
 {¶ 25} "NATHANIEL DUMAS WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO MOVE TO WITHDRAW HIS PLEA PRIOR TO SENTENCING, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."
 {¶ 26} Appellant argues that his counsel should have determined whether Appellant wanted to withdraw his plea during the July 29, 1998, sentencing hearing. Appellant argues that, under the Sixth Amendment to the United States Constitution, he has a right to effective assistance of counsel. Appellant asserts that counsel is ineffective if his or her performance falls below an objective standard of reasonable representation and, in addition, if prejudice arose from counsel's performance. Statev. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of syllabus, following Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. Appellant maintains that a reasonably competent attorney would have intervened when Appellant vehemently protested his innocence during the sentencing hearing. Appellant also claims that he was prejudiced by counsel's inaction, because if he had made a motion to withdraw his guilty plea before sentencing, it would likely have been granted under Ohio's liberal view of granting presentence motions to withdraw pleas. See Crim.R. 32.1; State v. Xie
(1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715.
 {¶ 27} Appellee argues that Appellant's counsel was merely applying trial tactics when he failed to raise any objections at the sentencing hearing. Appellee contends that debatable trial tactics do not necessarily constitute ineffective assistance of counsel, citing Statev. Wilkins (1980), 64 Ohio St.2d 382, 390, 18 O.O.3d 528, 415 N.E.2d 303.
 {¶ 28} An evaluation of Appellant's argument requires a closer examination of the state of affairs as they existed at the July 29, 1998, sentencing hearing. It is apparent from the record that Appellant did not proclaim his innocence at the June 10, 1998, plea hearing. The record does reveal, though, that the plea hearing left some issues unresolved pertaining to the type of sentence Appellant could receive if the court were to accept his guilty plea. (6/10/97 Tr., p. 13.) In fact, the trial judge, himself, raised some unanswered questions regarding the sentencing laws. (6/10/97 Tr., p. 13.) Although the judge purported to accept Appellant's plea, he also told Appellant that, "you're taking your chances when you're entering a plea here." (6/10/97 Tr., p. 13.) Appellant was "taking his chances" because no one at the plea hearing was certain whether Appellant could receive shock probation, judicial release or some alternative. At this point, the trial judge should either have sought an accurate view as to the status of the sentencing laws or should have continued the plea hearing.
 {¶ 29} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.Kercheval v. United States (1927), 274 U.S. 220, 223, 47 S.Ct. 582, 583,71 L.Ed. 1009, 1012; Mabry v. Johnson (1984), 467 U.S. 504, 508-509,104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437, 443; Boykin v. Alabama (1969),395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; State v. Kelley (1991),57 Ohio St.3d 127, 566 N.E.2d 658; Crim.R. 11(C)." State v. Engle
(1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450.
 {¶ 30} Crim.R. 11(C)(2)(a) attempts to guarantee that a guilty plea in a felony prosecution is made knowingly and voluntarily by requiring the trial court, before accepting the plea, to ascertain whether the offender understands the possible maximum penalty on conviction of the charges, and whether probation or community control sanctions could be part of the sentence.
 {¶ 31} Crim.R. 11(C)(2) states, in pertinent part:
 {¶ 32} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 33} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."
 {¶ 34} Compliance with Crim.R. 11(C) need not always be strict. If the rights involved are nonconstitutional in nature, a plea will be considered knowingly and voluntarily made if the trial court substantially complies with Crim.R. 11(C). State v. Ballard (1981),66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115, paragraph one of the syllabus, following Boykin v. Alabama (1969), 395 U.S. 238,89 S.Ct. 1709, 23 L.Ed.2d 274. Issues involving sentencing and probation have generally been treated as nonconstitutional rights, requiring the trial court to substantially comply with Crim.R. 11(C) with respect to those rights. State v. Johnson (1988), 40 Ohio St.3d 130, 133, 532 N.E.2d 1295;State v. Stewart (1977), 51 Ohio St.2d 86, 92-93, 5 O.O.3d 52,364 N.E.2d 1163 Substantial compliance means that, under the totality of the circumstances, the defendant subjectively understands the consequences of the plea and the nature of the rights being waived. Statev. Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.
 {¶ 35} Substantial compliance must certainly entail some attempt at compliance with Crim.R. 11(C). In this instant case, there was no attempt at compliance with Crim.R. 11(C)(2)(a) because neither the court nor the attorneys at the plea hearing were sure about the status of the law governing probation. Therefore, Appellant's plea was not made "knowingly" because neither he nor anyone else at the plea hearing knew what probation options were available.
 {¶ 36} Appellee asserted at oral argument that every criminal defendant who enters a plea "takes his chances" at sentencing, because the trial judge is not required to accept the sentencing recommendations of the prosecutor. This statement is certainly true. Appellant, though, was asked to take his chances as to which laws were going to apply to him after he pleaded guilty. A trial judge is required to apply the appropriate law; there is no judicial discretion involved as to accuracy of the law. Thomas v. Cook Drilling Corp. (1997), 79 Ohio St.3d 547,554, 684 N.E.2d 75. By verbally accepting Appellant's plea, the trial court was essentially asking Appellant to allow the court to have discretion in an area where the court has none. A guilty plea accepted under these circumstances is not enforceable.
 {¶ 37} Furthermore, the record contains no proper journal entry indicating that the judge accepted Appellant's guilty plea prior to the July 29, 1998, sentencing hearing. There is a preprinted and standardized judgment entry in the file, dated June 10, 1998, and signed by the judge, but the form was not filled out. It has no case name or number, and nothing about the preprinted judgment entry particularly associates it with the case before us. The lack of a proper journal entry, along with the unanswered questions about what sentence Appellant could receive, indicate that Appellant's guilty plea was never formally accepted prior to the July 29, 1998, sentencing hearing.
 {¶ 38} When Appellant protested his innocence at the July 29, 1998, hearing, the trial court had a duty to make further inquiries about the voluntariness of Appellant's plea as required by North Carolina v.Alford (1971), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. An Alford plea occurs when a defendant pleads guilty to a crime but at the same time protests his or her innocence. State v. Padgett (1990), 67 Ohio App.3d 332,337, 586 N.E.2d 1194. An Alford plea may be accepted in Ohio under the following conditions:
 {¶ 39} "Where the record affirmatively discloses that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made." State v. Piacella (1971), 27 Ohio St.2d 92, 56 O.O.2d 52,271 N.E.2d 852, syllabus.
 {¶ 40} Alford does not apply if the protestations of innocence are made after the guilty plea has been accepted the court. State v.Gales (1999), 131 Ohio App.3d 56, 60, 721 N.E.2d 497. As earlier discussed, though, the acceptance of Appellant's guilty plea had not yet been properly journalized by the court when Appellant protested his innocence. Appellant's plea remained open for discussion at the sentencing hearing. The trial court should have treated the sentencing hearing as a continuation of the plea hearing. In light of the unusual facts of this case, and the requirements of Alford and Piacella, the trial court had a duty to make further inquiries as to whether the plea made was knowingly, voluntarily and intelligently.
 {¶ 41} Appellant is not basing this appeal simply on the theory that his plea was made involuntarily and without knowledge. Appellant argues that it was obvious that his plea was not made knowingly or voluntarily. This theory is tangential to Appellant's argument that his trial counsel should have intervened to prevent the court from accepting the plea, or at least should have asked Appellant whether he wanted to withdraw the plea. Appellant concludes that trial counsel was ineffective for these alleged failures. The underlying error in this case around which Appellant's argument revolves, however, is the lack of a valid acceptance of the guilty plea, the lack of an Alford inquiry by the trial court, and the confusion regarding the sentencing options available to the trial judge. Thus, it is unnecessary to further analyze Appellant's ineffective assistance claims, particularly in light of the fact that much goes on outside of the record between an accused and his or her attorney during plea negotiations. It is very difficult, then, to overcome the presumption of validity which attaches to an attorney's actions. The errors apparent on the record here involve duties incumbent on the court, but which arose because of the confused facts of the case and the lapse of time between the plea hearing and the sentencing hearing.
 {¶ 42} Appellant's second assignment of error, although inartfully presented, does compel our conclusion that there was error in the guilty plea and sentencing proceedings. Appellant should be permitted to withdraw his guilty plea. At this point, however, merely remanding this matter for a new plea and possible trial would not best serve the interests of justice. This is true because Appellant has all but served the sentence which was imposed due to his faulty plea.
 {¶ 43} In turning to Appellant's first assignment of error, he asserts:
 {¶ 44} "NATHANIEL DUMAS WAS DENIED HIS RIGHT TO A SPEEDY APPEAL, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."
 {¶ 45} There is no express constitutional right to a speedy appeal. However, federal courts have held that extreme delay in processing an appeal may rise to the level of a due process violation. See, e.g.,United States v. Thomas (C.A.6 1999), 167 F.3d 299; United States v.Hawkins (C.A.8 1996), 78 F.3d 348; United States v. Luciano-Mosquera
(C.A.1 1995), 63 F.3d 1142; Harris v. Champion (C.A.10 1994), 15 F.3d 1538;Simmons v. Reynolds (C.A.2 1990), 898 F.2d 865; Rheuark v. Shaw (C.A.5 1980), 628 F.2d 297. The United States Supreme Court has also held, inEvitts v. Lucey, (1985), 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821, that if a state has given criminal defendants the right to a direct appeal, the procedures used in deciding criminal appeals must comport with the demands of due process and equal protection. Id. at 393. The right of due process guarantees that an appeal must be both "adequate and effective." Id at 392.
 {¶ 46} Courts have recognized that an appeal that is inordinately delayed is as much a "meaningless ritual" as an appeal that is adjudicated without the benefit of effective counsel or without a transcript of the trial court proceedings. Harris v. Champion, supra,15 F.3d at 1558.
 {¶ 47} Among the circumstances that can lead to a deprivation of due process are excessive delays in furnishing the transcripts needed for the appeal. See United States v. Luciano-Mosquera, supra; DeLancy v.Caldwell (C.A. 10 1984), 741 F.2d 1246; Rheuark v. Shaw, supra; Griffinv. Illinois (1956), 351 U.S. 12, 19-20, 76 S.Ct. 585, 100 L.Ed. 891.
 {¶ 48} In determining whether an appellate delay exceeds the limits of due process, federal courts have relied on the same criteria used for evaluating speedy trial violations as set forth in Barker v.Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. These factors are: (1) the length of the delay; (2) the reason for the delay; (3) whether and when the defendant asserted his or her right; and (4) whether there was prejudice to the defendant resulting from the delay. The fourth Barker factor, i.e., prejudice, is to be assessed in light of the interests that the right to a speedy disposition of an appeal is intended to protect. These interests are: (1) preventing oppressive incarceration pending appeal; (2) minimizing anxiety and concern of a convicted person awaiting the outcome of an appeal; and (3) limiting the possibility that the grounds for appeal or defenses in case of reversal and retrial might be impaired. Harris v. Champion, supra; Rheuark v. Shaw, supra.
 {¶ 49} Only one Ohio case has dealt directly with the issue of the due process right of speedy appeal. In State v. Hammon (Oct. 5, 2001), 6th Dist. No. E-97-129, the Sixth District Court of Appeals held that a three-year delay in preparing a transcript for the appeal, and a three-and-one-half year delay in obtaining an opinion, violated the right to a speedy appeal under the standards set forth in Harris v. Champion
and Barker v. Wingo, supra. Hammon is particularly relevant because, as in the case now under review, the delays were primarily caused by the failure of the defendant's original appellate counsel to prepare transcripts and other parts of the record on appeal. See State v. Hammon
(Feb. 3, 1999), 6th Dist. No. E-97-129.
 {¶ 50} In contrast, the Ohio Supreme Court has twice explicitly held that there is no right of speedy appeal comparable to the right of speedy trial. State v. Cooper (1977), 52 Ohio St.2d 163, 182, 6 O.O.3d 377, 370 N.E.2d 725 (speedy trial provisions have no application to appellate review); State ex rel. Jones v. Cuyahoga Cty. Ct. of CommonPleas (1978), 55 Ohio St.2d 130, 131, 9 O.O.3d 108, 378 N.E.2d 471
(speedy trial guarantees do not apply to proceedings subsequent to trial). The holdings of these two cases were not decided on due process grounds, and were decided prior to Evitts v. Lucey, supra, 469 U.S. 387,105 S.Ct. 830, 83 L.Ed.2d 821. However, unless and until such a right is specifically articulated by the Ohio Supreme Court, we decline to construe a speedy appeal right exists. That said, in fashioning a remedy for this particular Appellant in light of the fact that his sentence has been nearly served, it is instructive to go through the Barker factors.
 {¶ 51} Applying the first Barker factor to the instant case, this appeal has been pending just over four years. This is a very long time for a criminal appeal to linger in this Court, especially since the trial court record and transcripts only amount to a few dozen pages.
 {¶ 52} The second Barker factor would have us examine the reason for the delay. The entire length of the delay, from October 9, 1998, when Appellant's first appellate counsel, Attorney Knickerbocker, was appointed, until April 26, 2002, when he was removed, is attributable to counsel, i.e., his inaction, his requests for continuances, or his responses or lack of response to our orders and journal entries. This amounts to more than three and one-half of the four years the appeal has been pending. Counsel filed for a number of extensions and then attempted to withdraw as appellate counsel before the complete record had even been prepared and filed. The meager record consists of a few dozen pages in the trial court's appearance and execution docket, and two transcripts, both of which are less than twenty-five pages long. There is no indication that there was any problem with actually reproducing or transcribing these documents. There is no explanation as to why counsel failed to timely file the transcripts and the record with this Court.
 {¶ 53} Delays arising from the inaction of appointed counsel on appeal are not typically attributed to the defendant, at least with respect to the federal speedy appeal arena. Simmons v. Reynolds (C.A.2 1990), 898 F.2d 865, 868; Coe v. Thurman (C.A.9 1990), 922 F.2d 528,531; Harris, supra, 15 F.3d at 1562; United States v. Johnson (C.A.4 1984), 732 F.2d 379, 382. Therefore, this Barker factor would weigh heavily in Appellant's favor.
 {¶ 54} The third Barker factor involves whether the Appellant asserted his speedy appeal right in a timely fashion. Since this factor is solely geared to a right not yet recognized in Ohio, it is inapplicable.
 {¶ 55} The fourth Barker factor is whether Appellant suffered prejudice from the delay in his appeal. This factor actually brings us to the crux of our dilemma should we remand this matter. Appellant has been incarcerated during this entire appeal process. We cannot say that Appellant may not have received a greater sentence or whether he would have even been convicted on remand. Most of the sentence imposed in his faulty plea has already been served.
 {¶ 56} Because Appellant has been in prison during the appeal process and has practically served out his entire five-year prison sentence, it appears that he will be severely hampered by withdrawing his plea. The prosecutor will have no incentive to renegotiate a plea because Appellant has already served the sentence appropriate to his plea bargain. The prosecutor would only have an incentive to bring the case to trial in hopes of obtaining a longer prison term. Appellant gains nothing and risks a longer prison term because of the delay in processing this appeal
 {¶ 57} In this instant case, the record reflects that the trial court should not have accepted Appellant's guilty plea without a further inquiry. If Appellant had been able to prosecute this appeal in a timely manner, the matter would have been reversed and remanded long ago. Appellant may have been able to renegotiate a plea agreement with the prosecutor, or assert his innocence at trial. While it is possible Appellant would have served a longer sentence, it is equally true that Appellant might have been able to secure a much shorter prison sentence, or possibly no prison term at all. As it now stands, allowing Appellant to withdraw his plea at this late date and remanding the matter would not best serve the interests of justice. Only Appellant runs a risk of loss, here. Appellant would certainly be at risk of receiving an even longer sentence at trial after having already served almost his entire original sentence. Therefore, this case presents a rare situation where a dismissal of the charges, not merely a remand, is appropriate.
 {¶ 58} Appellant has presented this Court with a meritorious issue on appeal. If the appeal had been timely processed, Appellant's conviction would have been reversed and the matter would have been remanded to the trial court with instructions to allow Appellant to withdraw his plea. Unfortunately, due to the delays on the part of Appellant's first appellate counsel, Appellant has served all but the last remaining months of his sentence. While caused by his counsel, the delays should not be attributed to Appellant. Although dismissal of the charges is an extraordinary remedy, it is appropriate in this case. Because we find that this is the appropriate course of action in this matter pursuant to his second assignment of error, Appellant's first assignment of error as to his alleged due process violation is rendered moot. Appellant's conviction and sentence are reversed and the charges against him are hereby dismissed.
Donofrio, J., concurs.
Vukovich, P.J., concurs.